Robert Ahdoot, CA Bar No. 172098
rahdoot@ahdootwolfson.com
Tina Wolfson, CA Bar No. 174806
twolfson@ahdootwolfson.com
Theodore W. Maya, CA Bar No. 223242
tmaya@ahdootwolfson.com
Bradley K. King, CA Bar No. 274399
bking@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JENNIFER HODSDON, individually and on behalf of all others similarly situated, | Case No. 5:18-cv-2424 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| INTEL CORPORATION, | |
| Defendant. | |

Plaintiff Jennifer Hodsdon ("Plaintiff"), by and through her counsel, brings this Class Action Complaint against Defendant Intel Corporation ("Defendant") on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This is a class action arising from Defendant's failure to disclose a critical defect in its semiconductor chips ("CPUs") that exposes CPU users to serious security vulnerabilities.

2. Defendant is one of the world's largest manufacturers of CPUs, the hardware component of a computer responsible for interpreting and executing most of the commands from the computer's hardware and software.

3. Defendant's focus on producing a faster CPU left its CPUs with security vulnerabilities and exposed to attack. Since,1995, Defendant's CPUs have been designed to perform a process known as "speculative execution," which is intended to increase performance by allowing a CPU to predict its next set of instructions. Although this may increase the CPU's speed, Defendant knows and has known for many months—and confirmed on January 3, 2018—that speculative execution creates serious security vulnerabilities that can be exploited by hackers to steal passwords, encryption keys, photos, emails, instant messages, sensitive business documents, and other sensitive data (the "Defect").

4. Reportedly, approximately 90% of the 1.5 billion personal computers in use today are powered by Defendant's CPUs. The Defect exists in nearly every CPU Defendant has manufactured in the last 20 years, affecting most personal computers, laptops, smartphones, tablets, and servers in use today (the "Devices").

5. Third-party researchers were able to discover the Defect in 2017, when Defendant knew or should have known of the Defect much earlier with its inside knowledge of its CPUs design and functionality. Since the exposure of the Defect,

Defendant has acknowledged the Defect and software companies have scrambled to introduce software patches to cure the Defect. However, the Defect is hardware-based, so these patches only mitigate the security threat while significantly compromising the Device's performance. Defendant has conceded that the Defect may only be cured by an architectural change to its CPUs' hardware.

6. Since security is an essential feature of any Device, Defendant's CPUs sold to Plaintiff and the Class were not merchantable and unfit for their ordinary and particular purposes for which such goods are used. Plaintiff and Class Members are now forced to either purchase new devices without the Defect or continue to use their defective Devices with security vulnerabilities and/or reduced performance.

7. Plaintiff and Class members suffered injuries as a result of Defendant's conduct because they would not have purchased their Devices or would not have paid the price they paid for them, but for Defendant's failure to disclose the Defect.

## PARTIES

8. Plaintiff is a resident of Santa Barbara, California. Plaintiff purchased a 13" Apple MacBook Pro in or around 2017 with a 2.7 GHz Intel Core i5 processor affected by the Defect. Plaintiff would not have purchased her Device or would not have paid the price she paid for it, but for Defendant's failure to disclose the Defect.

9. Defendant is a Delaware corporation with its principal place of business at 2200 Mission College Boulevard, Santa Clara, California. Defendant conducts business throughout the United States and is registered to do business in California.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of states different from Defendant.

11. This Court has personal jurisdiction over Defendant because it is headquartered in this District and is registered to conduct business in California.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District.

13. Assignment is proper in the San Jose Division pursuant to N.D. Cal. L.R. 3-2, because a substantial part of the events or omissions giving rise to Plaintiff's claims arose in Santa Clara County, which is served by this Division. Defendant's principal place of business, from which Defendants' acts or omissions pertinent to Plaintiff's claims emanated, is situated in Santa Clara County.

## FACTUAL BACKGROUND

14. Defendant is a technology company headquartered in Santa Clara, California. Until 2017, Intel was the world's largest manufacturer of CPUs. Intel sells its CPUs individually and as components of Devices manufactured by other companies such as Apple, Asus, Acer, Google, Lenovo, Hewlett Packard, and Dell. To date, reportedly 90% of the approximately 1.5 billion personal computers in use are powered by Defendant's CPUs.

15. On January 3, 2018, a Google report revealed that, sometime in 2017, security researchers from Google's Project Zero discovered "serious security flaws" existing in most of Defendant's CPUs. The security flaws—dubbed Meltdown and Spectre—were reportedly discovered simultaneously by multiple research groups working independently from one another, including researchers from Cyberus Technology and the Graz University of Technology.

16. The Meltdown and Spectre vulnerabilities are the result of an undisclosed tradeoff that Defendant made between security and performance in order to manufacture faster CPUs and become the dominant CPU manufacturer in the industry. Specifically, beginning in 1995, Defendant began designing its CPUs to perform a process known as "speculative execution." Speculative execution increases performance by allowing a CPU to predict its next set of instructions.

17. However, Defendant prioritized speed and performance over security. As

3

discovered by researchers from Google and elsewhere, speculative execution can be exploited by hackers to access sensitive data stored in the memory of a computer in order to steal passwords, encryption keys, photos, emails, instant messages, sensitive business documents, and other sensitive data.

18. Meltdown affects nearly every processor Defendant has manufactured since 1995. Spectre is more far-reaching and impacts most desktops, laptops, cloud servers, and smartphones in use today. Many millions of devices in use today are affected by the Defect.

19. Defendant has admitted that it knew about the Defect for at least six months. Nonetheless, Defendant continued to manufacture, sell, and distribute defective CPUs without disclosing the Defect. Defendant knew or should have known about the Defect long ago but either failed to disclose it or was negligent and reckless in failing to discover it. In 2017, three independent security researchers discovered the Defect using Defendant's proprietary information. Defendant, with its inside knowledge and familiarity with the design of its CPUs, was in a better position to discover the Defect than these third-party researchers and, as the manufacturer and seller of the defective CPUs, had a duty to discover and disclose it to consumers.

20. Companies like Apple, Google, and Microsoft have attempted to protect against the security threat associated with the Defect by introducing software patches to address its vulnerabilities. However, these patches reportedly reduce the performance of a Device and can only mitigate the problem, since the Defect is hardware-based.

21. Defendant has since released statements that it is investigating "architecture and/or microarchitecture changes" to its CPUs to remedy the Defect, confirming that a full redesign, and not just a software patch, would be needed.

## CLASS ACTION ALLEGATIONS

22. Plaintiff seeks relief in her individual capacity and as a representative of all others who are similarly situated. In accordance with Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following Class:

> All persons residing in the United States who purchased one or more Intel CPU with the Defect either from Intel, its authorized retail sellers, or from a computer retailer of manufacturer who installed the defective CPU inside the consumer's Device (the "Class").

23. Excluded from the Class are Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families.

24. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, based on media reports, millions of consumers have Devices affected by the Defect.

25. <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

   a. Whether Defendant breached its express warranties to Plaintiff and Class Members;
   b. Whether Defendant breached its implied warranties to Plaintiff and Class Members;
   c. Whether Defendant violated 15 U.S.C. § 2301, *et seq.*;
   d. Whether Defendant violated California Business and Professions Code § 17200, *et seq.*;
   e. Whether Defendant violated California Civil Code § 1750, *et seq.*; and
   f. The nature of the relief, including equitable relief, to which Plaintiff and Class Members are entitled.

26. <u>Ascertainability</u>.  All members of the purposed Class are readily ascertainable.  Defendant has access to contact information for all, or substantially all, Class Members via sales and/or warranty records, which can be used for providing notice to many Class Members.

27. <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of those of other Class members because Plaintiff's CPU, like that of every other Class Member, is affected by the same Defect.

28. <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff's Counsel are competent and experienced in litigating class actions.

29. <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable.  Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

30. Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

31. Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## COUNT I

### Breach of Express Warranties

32. Plaintiff incorporates the allegations above as if fully set forth herein.

33. Defendant designed, manufactured, advertised, and distributed defective

CPUs.

34. Defendant is a "merchant" and its CPUs are "goods" within the meaning of the Uniform Commercial Code.

35. In connection with each sale, Defendant represented that its CPUs provided security, which they did not, and were of particular processing speeds, which they are not after implementation of a software patch necessary to mitigate security threats caused by the Defect.

36. Defendant's affirmations of fact and promises relating to its defective CPUs became part of the basis of the bargain and created an express warranty that the CPUs would conform to Defendant's affirmations and promises.

37. Defendant's express warranties run to Plaintiff and Class Members either directly or as third-party beneficiaries.

38. Defendant breached its express warranties by delivering CPUs that failed to conform to Defendant's affirmations and promises.

39. All conditions precedent to Plaintiff's claims herein have been satisfied.

40. Defendant's breach of express warranties directly and proximately caused damages, injury in fact, and ascertainable loss to Plaintiff and Class Members, in an amount to be determined at trial.

## COUNT II

### Breach of Implied Warranties

41. Plaintiff incorporates the allegations above as if fully set forth herein.

42. Defendant and its authorized agents and resellers are merchants who sold Defendant's CPUs to Plaintiff and Class Members in the regular course of business.

43. As such, Defendant impliedly warranted that each CPU was merchantable and fit for a particular purpose in each sale to Plaintiff and Class Members.

44. To be merchantable, Defendant's CPUs, at a minimum, were required to pass without objection in the trade under the contract description, be fit for the ordinary purposes for which such goods are used, and conform to the promises or affirmations of

fact made on their packaging.

45. Defendant's implied warranties extend directly to Plaintiff and Class Members either directly or as third-party beneficiaries.

46. Defendant breached the implied warranty of merchantability by delivering CPUs that were not merchantable because the CPUs could not pass without objection in the trade under the contract description in that they provide deficient security and performance, which are key features of a CPU, because they did not conform to Defendant's promises or affirmations of fact regarding their security and performance, and because they were not fit for the ordinary purposes for which CPUs are used, which is to provide fast and secure computer processing power.

47. All conditions precedent to Plaintiff's claims herein have been satisfied.

48. Defendant's breaches of implied warranties directly and proximately caused damages, injury in fact, and ascertainable loss to Plaintiff and Class Members, in an amount to be determined at trial.

## COUNT III

**Violation of California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq*.**

49. Plaintiff incorporates the allegations above as if fully set forth herein.

50. Defendant engaged in unfair, fraudulent and unlawful business practices in violation of the Unfair Competition Law ("UCL").

51. Plaintiff suffered injury in fact and lost money or property as a result of Defendant's alleged violations of the UCL.

52. The acts, omissions, and conduct of Defendant as alleged constitutes "business practices" within the meaning of the UCL.

53. Defendant violated the unlawful prong of the UCL by violating, *inter alia*, the CLRA and MMWA, as alleged below.

54. Defendant's acts, omissions, and conduct also violate the unfair prong of the UCL because those acts, omissions, and conduct, as alleged herein, offended public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that

caused substantial injury, including to Plaintiff and Class Members.  The harm cause by Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests, other than Defendant's conduct described herein.

55. By knowing or negligently selling Plaintiff and Class Members defective CPUs susceptible to serious security vulnerabilities, Defendant engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

56. A reasonable person would not have agreed to purchase the defective CPUs and/or Devices containing the defective CPUs had he or she known the truth about the Defect.  By withholding material information about the Defect, Defendant was able to convince users to purchase the defective CPUs.

57. Defendant's misconduct as described herein also constitutes an unfair business practice under the UCL.  Defendant's conduct is unethical, unscrupulous, and substantially injurious to Class Members.

58. As a result of Defendant's violations of the UCL, Plaintiff and Class Members are entitled to injunctive relief.

59. As a result of Defendant's violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property, as detailed above. Plaintiff requests that the Court issue sufficient equitable relief to restore Class Members to the position they would have been in had Defendant not engaged in unfair competition.

## COUNT IV

**Violation of California Consumers Legal Remedies Act, Civ. Code § 1750, *et seq.***

60. Plaintiff incorporates the allegations above as if fully set forth herein.

61. Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

62. Plaintiff and Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

63. The defective CPUs constitute "products" as defined by Cal. Civ. Code § 1761(b).

64. Plaintiff's and Class Members' purchases of the defective CPUs and/or Devices containing the defective CPUs constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

65. Plaintiff's and Class Members' purchases of the CPUs were for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

66. Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the transactions at issue occurred in this District. (*See* Declaration of Tina Wolfson, attached hereto.)

67. Defendant deceived consumers in its marketing, advertising, and labeling of the CPUs. Further, Defendant knew or should have known that its marketing, advertising, and labeling of the CPUs would mislead a reasonable consumer.

68. Defendant's misrepresentations and nondisclosures violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") in the following manner:

   a. In violation of Section 1770(a)(5), Defendant misrepresented that the CPUs had characteristics, benefits, or uses that they did not have (that the CPUs were free from defects when in fact they were not);

   b. In violation of Section 1770(a)(7), Defendant misrepresented that the CPUs were of a particular standard, quality, and/or grade when they were of another (that the CPUs were free from defects when in fact they were not);

   c. In violation of Section 1770(a)(9), Defendant advertised the Products with an intent not to sell them as advertised (advertising the Products as free from defects when they were not);

   d. In violation of Section 1770(a)(14), Defendant misrepresented that the Products conferred or involved rights, remedies, or obligations that they did not have (that the CPUs were free from defects when in fact they were not); and

  e. In violation of Section 1770(a)(16), Defendant misrepresented that the CPUs were supplied in accordance with previous representations when they were not (that the CPUs were free from defects when in fact they were not).

69. Defendant's misrepresentations and nondisclosures regarding the CPUs were never disclosed at the time of purchase, or at any time thereafter, and were material to Plaintiff and Class Members because a reasonable person would have considered the Defect important in deciding whether or not to purchase the CPUs and because Defendant had a duty to disclose the truth about the Defect.

70. Plaintiff and Class Members relied upon Defendant's material misrepresentations and nondisclosures and, had Plaintiff and Class Members known the truth about the Defect, they would not have purchased the CPUs and/or the Devices containing the CPUs, or would not have paid as much for them.

71. As a direct and proximate result of Defendant's material misrepresentations and nondisclosures, Plaintiff and Class Members have been irreparably harmed.

72. On behalf of the Class, Plaintiff seeks injunctive relief in the form of an order enjoining Defendant from making such material misrepresentations and failing to disclose or actively concealing its aforementioned practices. Plaintiff also seeks attorneys' fees and costs.

73. In accordance with Cal. Civ. Code § 1782(a), on April 23, 2018, Plaintiff's counsel served Defendant with notice of the CLRA violations by certified mail, return receipt requested.

74. If Defendant fails to provide appropriate relief for its CLRA violations within 30 days of receipt of Plaintiff's notification letter, Plaintiff will amend this Complaint to also seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

## COUNT V

**Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.***

75. Plaintiff incorporates the allegations above as if fully set forth herein.

76. Defendant's CPUs are consumer products as defined in 15 U.S.C. § 2301(1).

77. Plaintiff and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

78. Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)-(5).

79. By reason of Defendant's breach of its implied and express warranties that the its CPUs were merchantable, fit for their ordinary and particular purposes, and free from material defects, Defendant violated the rights of Plaintiff and Class Members.

80. As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have suffered economic damages pertaining to their Devices including, but not limited to, security vulnerabilities, decreased performance, substantial losses in value and resale value, and other damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class Members proposed in this Complaint, respectfully requests that the Court enter judgment in her favor and against Defendant, as follows:

A. For an Order certifying this action as a class action and appointing Plaintiff and her Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the Defect, and from refusing to issue prompt, complete, and accurate disclosures of the Defect;

C. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

D. For an award of actual damages, compensatory damages, statutory

damages, and statutory penalties, in an amount to be determined;

     E.    For an award of costs of suit and attorneys' fees, as allowable by law; and

     F.    Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all claims so triable.

Respectfully submitted,

Dated:  April 23, 2018        */s/ Tina Wolfson*
                                Robert Ahdoot
                                Tina Wolfson
                                Theodore W. Maya
                                Bradley K. King
                                AHDOOT & WOLFSON, PC
                                10728 Lindbrook Drive
                                Los Angeles, California 90024

                                *Counsel for Plaintiff*

# **DECLARATION OF TINA WOLFSON**

I, Tina Wolfson, declare as follows:

1. I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff Jennifer Hodsdon ("Plaintiff") in the above-captioned action. I am admitted to practice law in California and before this Court, and I am a member in good standing of the State Bar of California. This declaration is made pursuant to California Civil Code section 1780(d). I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2. Venue is proper in this Court because Plaintiff suffered injuries as a result of acts by Defendant Intel Corporation ("Defendant") in this District, including Defendant's corporate decisions regarding the design and manufacture of CPUs in this District. Defendant is headquartered in this District and is registered to do business in California.

3. Plaintiff is a resident of Santa Barbara, California, in Santa Barbara County.

4. Defendant is a Delaware corporation registered to do business in California with its principal place of business located at 2200 Mission College Boulevard, Santa Clara, California.

I declare under penalty of perjury under the laws of the United States and the State of California this 23rd day of April, 2018 in Los Angeles, California that the foregoing is true and correct.

*/s/ Tina Wolfson*
Tina Wolfson